733 So.2d 846 (1998)
Carl Eugene MILLER, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00072 COA
Court of Appeals of Mississippi.
December 18, 1998.
Rehearing Denied April 6, 1999.
*847 George S. Shaddock, Pascagoula, Attorney for Appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Attorney for Appellee.
Before McMILLIN, P.J., and COLEMAN and PAYNE, JJ.
McMILLIN, P.J., for the Court:
¶ 1. Carl Miller was convicted of manslaughter in the death of Levi Tanner and has appealed to this Court citing six issues for our consideration. We find one of the issues to have merit and reverse and remand this conviction for further proceedings.

I.

Facts
¶ 2. Miller and several friends became involved in a confrontation with Tanner and a number of his friends over the circumstances surrounding the arrest of the sister of one of Tanner's companions. *848 Testimony offered by the State showed that Miller, suddenly and without apparent provocation, struck Tanner a blow with his fist. The blow landed on Tanner's neck, injuring his spinal cord and causing his almost instantaneous death. Miller was indicted for involuntary manslaughter under Section 97-3-47 of the Mississippi Code of 1972 and convicted by a Harrison County Circuit Court jury. This appeal ensued. Miller's fourth issue raised in his brief involves the trial court's failure to grant his requested self-defense instruction. Because we consider this issue to have merit, we will consider it first.

II.

Instruction on Self-Defense
¶ 3. Miller raises as an issue on appeal the fact that the trial court refused his requested Instruction D-7, which he asserted to be a self-defense instruction. (The full text of the instruction is quoted in Appendix A to this opinion.) Miller argues that his sole defense to the case was self-defense and the trial court's decision to refuse him this instruction denied him a fundamentally fair trial since he was unable to have the jury instructed on the law that was critical to his ability to defend himself at trial. There were no other instructions given to the jury that discussed the concept of self-defense.
¶ 4. The State answers this contention by arguing that Instruction D-7 was not an accurate statement of the law of self-defense and was, thus, properly denied. It also asserts that there is no evidence in the record to support even a properly drafted self-defense instruction.
¶ 5. We agree with the State as to the form of the requested instruction, but disagree as to the idea that the evidence did not warrant the giving of a properly drafted self-defense instruction. The requested Instruction D-7 does not appear to properly set out the law of self-defense. After mentioning several of the elements of self-defense dealing with the reasonable apprehension of the defendant of imminent physical harm at the hands of another, the instruction veers unexpectedly into the area of "sudden combat"an issue relating to excusable homicide but unrelated to self-defense. Nevertheless, it is clear that the defense was advancing the instruction as a self-defense instruction. When the trial court indicated that the instruction would be refused, defense counsel stated, "That's our instruction putting forth our theory of self-defense, Your Honor." It is equally clear that the trial court did not refuse the instruction because of the lack of artfulness in its drafting, but on a more basic consideration. In response to defense counsel's statement, the trial court said,
It's not a self-defense case. I'm going to refuse it. There is no evidence whatsoever in the record that this defendant was in any fear of an imminent attack upon his person, or of any fear that he was going to suffer any serious bodily injury, nor in any fear that death was impending. This is not a self-defense case.
¶ 6. This statement by the trial court appears to completely disregard the testimony of defense witness Craig Broadus. Broadus testified that he was in the company of Miller when they discovered they were being followed by a group of four young men that included the victim. He claimed that he was under some measure of apprehension because the four were "being real violent." Broadus testified that Miller directed him to go summon another friend, from which the jury could reasonably infer that Miller was also feeling threatened. Broadus testified that Miller then turned and began walking toward, instead of away from, the four other individuals as they continued to approach him. He then testified, "And I don't know if they had words or not, but Levi drawed back to hit Carl. But before Levi hit Carl, Carl hit him."
¶ 7. It is a basic tenet of our criminal system that a defendant is entitled *849 to fully develop his theory of the defense and, so long as there is some supporting evidence in the record, to have the jury instructed as to the law on that theory. Manuel v. State, 667 So.2d 590, 591 (Miss.1995). It is not necessary that the quality of the proof in support of the defendant's theory rise to any certain level of credibility or that some minimum quantum of proof be developed. Id. at 593. Even the flimsiest of evidence, so long as it has some probative value, is enough to permit a defendant to have the jury instructed on his theory of the case. Hester v. State, 602 So.2d 869, 872 (Miss.1992). This concept has specifically been used when the defendant asserts self-defense in justification of his actions and asks for a self-defense instruction. Anderson v. State, 571 So.2d 961, 964 (Miss.1990).
¶ 8. Broadus testified concerning facts that would, if believed, appear to make a jury issue on self-defense. Whether Broadus was an untrustworthy witness whose evidence was so worthless as to be rejected was a matter for consideration by the jury in determining the question of self-defense and not a question to be resolved by the trial court in deciding whether a self-defense instruction was warranted.
¶ 9. As to the defects in the form of Instruction D-7, case law in Mississippi is clear that, in such a situation, the trial court cannot simply reject the poorly-drafted instruction, thus depriving the defendant of his defense, but the court has "the duty to make reasonable modifications of the requested instruction or, at the very least, to point out to [the defendant] wherein it may have been deficient and allow reasonable opportunity for correction." Anderson, 571 So.2d at 964.
¶ 10. Having concluded that Miller was prevented from fully trying the issue of self-defense by the trial court's refusal to instruct the jury on the law of self-defense, we are compelled to reverse and remand this case for a new trial.

III.

Considerations on Retrial
¶ 11. In reversing and remanding this case, we would offer some additional direction to those involved in the case on the issue of culpable negligence homicide. Miller was indicted and tried under Section 97-3-47. The indictment, pursuant to authority of Section 99-7-37, did nothing more than charge that Miller feloniously killed his victim within the meaning of the applicable manslaughter statute. Miller complained that he was indicted for purposely causing Tanner's death but was tried under principles of culpable negligence. He asserted that as being an impermissible amendment to the indictment. That argument is without merit based on the statute regarding the method of charging manslaughter in the indictment, but it does lead to a matter that this Court concludes should be rectified in the event of retrial.
¶ 12. The common law recognized two basic forms of manslaughter. One was called voluntary manslaughter and involved the situation where the defendant purposely took the life of his victim, not with premeditation, but upon a sudden provocation sufficient to incite the defendant's passion. WAYNE R. LAFAVE AND AUSTIN W. SCOTT, JR., HANDBOOK ON CRIMINAL LAW §§ 75-76 (1972). This "heat of passion" manslaughter is essentially codified in Mississippi Code of 1972 Section 97-3-35.
¶ 13. The other form of common law manslaughter was termed involuntary manslaughter, which was designed to criminally punish a defendant whose actions caused the death of another in certain circumstances, even though the defendant had no intention or design to effect a death. Under the common law, involuntary manslaughter arose in two broad general circumstances. The first was where the defendant was committing an illegal act not amounting to a felony that caused a death, though the killing was not intended *850 and the act was one that, in the ordinary course of events, would not reasonably be expected to produce death. The second was when the defendant was engaged in activity of a degree of negligence of such gravity as to be termed criminal negligence or culpable negligence and the culpably negligent activity caused the death of another. LAFAVE, supra §§ 75,78. It has been said by the Mississippi Supreme Court that Mississippi Code of 1972 Section 97-3-47 is our statutory form of the common law crime of involuntary manslaughter. Craig v. State, 520 So.2d 487, 491 (Miss.1988). This brief code section states that "[e]very other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter." Miss. Code Ann. § 97-3-47 (Rev.1994).
¶ 14. While much of the reported case law on Section 97-3-47 deals with manslaughter convictions based on the theory of culpable negligence, we are satisfied that the language is sufficient to encompass the other general form of common law involuntary manslaughter. If Miller's action in striking Tanner was intentional and done without provocation, there can be no logical basis to argue that this act of striking Tanner was negligently undertaken. Nevertheless, one blow with a fist would not, in the normal circumstance, be expected to produce a death. Neither does the striking of another with a fist, in the normal circumstance, rise to the level of a felony. Thus, based on the State's theory of prosecution in this case, it would appear that Miller was properly triable for the crime of involuntary manslaughter, as that crime was understood at the common law, without consideration of principles of culpable negligence.
¶ 15. The jury in this case was instructed solely on the principles of culpable negligence principles that would, on a more rigorous analysis of the State's theory of its case, appear to be inappropriate. The defense interposed no objection to the jury being instructed on this theory of manslaughter except his attack on the perceived variance between the indictment and the instructionsan attack we find without merit. However, we observe on our own motion that Mississippi case law has, in several instances, made the point that the wilful act of striking another person cannot, by any definition, be considered as an act of negligence. Jolly v. State, 269 So.2d 650, 653 (Miss.1972); Irby v. State, 186 Miss. 161, 169, 185 So. 812, 815 (1939). It ought to be self-evident that asking the jury to view such intentional acts under the concept of negligence, even when the word "negligence" is coupled with descriptive terms intended to make it appear more blameworthy, is to invite confusion on the part of the jury.
¶ 16. In the event this case is retried and the State elects to proceed on essentially the same evidence, it would appear more appropriate to instruct the jury on the form of involuntary manslaughter that involves wrongful acts intentionally done but unexpectedly producing a death rather than on the inapplicable and substantially confusing concept of culpable negligence.
¶ 17. As to the motion in limine concerning the exclusion of Miller's statement about prior fights as being impermissible evidence under Mississippi Rule of Evidence 404(b), we find no error in the trial court's ruling, which did not, unequivocally, exclude the evidence. Miller incorrectly argues that the trial court ruled the evidence would be admissible if Miller attempted to show that Tanner, rather than Miller, was the aggressor in their confrontation. What the trial court actually ruled was that, if Miller attempted to put his own character as a peaceful person into evidence, the trial court would hold that Miller had opened the door to evidence rebutting the notion of his peaceful character. This is not error. A defendant may, at his own election, put into issue some particular character trait as circumstantial evidence tending to show that he did not commit the criminal act for which he is *851 being tried. M.R.E. 404(a)(1); 22 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5236 (1978). However, once he elects to do so, the defendant opens the door to countering evidence from the prosecution that his actual character in that particular area is not what the defense assertsevidence that would, otherwise, often be inadmissible. M.R.E. 404(a)(1). Once evidence is admitted as to the defendant's trait of character, the State's rebuttal may include, "[o]n cross-examination, inquiry ... into relevant specific instances of conduct." M.R.E. 405(a). This would appear to cover an inquiry into Miller's apparent statement to the authorities about prior fights.
¶ 18. Other issues raised in the appellant's brief have been rendered moot by our decision to reverse and remand on the basis of the trial court's failure to grant Miller a self-defense instruction.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS REVERSED AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
BRIDGES, C.J., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.
THOMAS, P.J., not participating.

APPENDIX A

Jury Instruction D-7
The Court instructs the jury that you are not to judge the actions of CARL EUGENE MILLER, JR. in the cool, calm light of after-developed facts, but instead you are to judge the defendant's actions in the light of the circumstances confronting the defendant at the time, as you believe from the evidence that those circumstances reasonably appeared to the defendant on that occasion; and if you believe that under those circumstances it reasonably appeared to CARL EUGENE MILER, JR. that he then and there had reasonable ground to apprehend a design on the part of LEVI TANNER to do him some personal injury, and that there reasonably appeared to CARL EUGENE MILLER, JR. to be imminent danger of such design being accomplished, then he was justified in anticipating an attack by LEVI TANNER, and further if you believe from the evidence, or have a reasonable doubt therefrom, that LEVI TANNER died as a result of a sudden combat, with no undue advantage being taken nor deadly weapon used by the defendant, and that the killing was not done in a cruel and unusual manner, then it is your sworn duty to find CARL EUGENE MILLER, JR. not guilty.