ON WRIT OF CERTIORARI

WALLER, Chief Justice,
for the Court:
¶ 1. The Court of Appeals reversed Cory J. Maye’s conviction for capital murder and remanded for a new trial, finding that the trial court had violated Maye’s constitutional right to be tried in the county where the offense occurred. We granted both the State’s and Maye’s petitions for certiorari. Finding that the circuit court improperly denied Maye’s requested defense-of-others jury instruction, we vacate the Court of Appeals’ decision, reverse the circuit court’s judgment, and remand this case to the trial court for further proceedings consistent with this opinion. We do not address the vicinage issue, but on remand, Maye is entitled to reassert his right to be tried in Jefferson Davis County.
FACTS AND PROCEDURAL HISTORY
¶ 2. In December 2001, Cory Maye fatally shot Officer Ron Jones of the Prentiss Police Department while Jones was executing a search warrant on Maye’s apartment. The following facts surrounding the execution of the search warrant and Maye’s shooting of Officer Jones are taken *1126 from the Court of Appeals’ opinion. See Maye v. State, 49 So.3d 1140 (Miss.Ct.App.2009).
On the evening of December 26, 2001, Officer Ron Jones of the Prentiss Police Department secured two search warrants for a duplex located on Mary Street in Prentiss, Mississippi. Officer Ron Jones presented two affidavits and search warrants to Municipal Judge Donald Kruger. Officer Ron Jones signed the affidavits in the presence of Judge Kruger. The affidavits indicated that Officer Ron Jones had received information from a confidential informant who had within the prior twenty-four hours seen a large amount of marijuana stored in the duplex. Officer Ron Jones also attested that he had information from various sources that drugs were being sold out of the duplex. Officer Ron Jones attested that he had conducted surveillance of the duplex and had seen large amounts of traffic there at unusual hours. Judge Kruger discussed the search warrant with Officer Ron Jones, and later testified, ‘Tes, I talked with him about it. He said that he was reliable, a person, that the informant was, and that one or two arrests had been made because of this reliable, this so-called reliable informant.” Based on Officer Ron Jones’s affidavit, Judge Kruger issued two search warrants for the Mary Street duplex, one for the left side of the duplex identifying Jamie Smith and/or persons unknown as the occupants and one for the right side of the duplex, which listed persons unknown as the occupants.
After securing the search warrants, Officer Ron Jones selected a team from the Prentiss Police Department, the Bassfield Police Department, the Jefferson Davis County Sheriffs Department, and the Pearl River Basin Narcotics Task Force to assist him in executing the search warrants. The officers were separated into two teams: one team to search the left side of the duplex and the other team to search the right side of the duplex. Agent Darrell Graves led Officers Mike Brown, Earl Bullock, Allen Allday, and Terrence Cooley in executing the search warrant on Smith’s apartment, which was the left side of the duplex. Officer Ron Jones led Officers Stephen Jones, Darrell Cooley, and Phillip Allday in executing the search warrant on Maye’s apartment, which was the right side of the duplex.
The officers arrived at the Mary Street duplex in marked police cars. The officers parked the cars directly in front of the duplex. Officer Ron Jones’s team was the first to arrive at Maye’s side of the duplex. Officers Ron Jones, Stephen Jones, and Darrell Cooley took the front door with Officer Phillip Allday guarding the back door.
Maye testified that he was asleep on the “chair right beside the front door.” The officers testified that they went to the front door and loudly announced, “police, search warrant,” three times. Officer Darrell Cooley testified that he arrived at the door first. The front porch light was on. Officer Darrell Cooley testified that he loudly announced, “police,” then someone behind him announced, “search warrant.” He then kicked at the door. Officer Darrell Cooley testified that he yelled “police” a second time, then someone behind him announced “search warrant” loudly. Again, Officer Darrell Cooley kicked at the door.
Officer Stephen Jones reported that at this point he could see a light in the house through the cracked blinds. He testified that “[t]he blinds opened, it appeared that somebody opened the blinds and looked out.” When the blinds were *1127 opened, he noticed the light on inside of Maye’s apartment. Officer Darrell Cooley testified that this was the first time that he noticed a light on inside the apartment. Officer Darrell Cooley testified that he looked “back in toward the window on the door, and [he] could see a light back to the left side of the door.”
After noticing the light, Officer Darrell Cooley yelled, “police,” a third time with someone behind him announcing “search warrant.” When the door would not open, the officers decided to go to the back of the duplex to gain entry.
Officers Phillip Allday and Terrence Cooley were at the back of the duplex. Officer Terrence Cooley testified that he could “clearly hear” his fellow officers at the front of the house announce police, search warrant three times while he was at the back steps.
Officer Graves was in charge of executing the search warrant on Smith’s apartment (left side). Officer Graves confirmed that the officers on Maye’s side of the duplex had announced, “police, search warrant,” as Officer Graves approached Smith’s apartment. The occupants of Smith’s apartment (left side) responded to the announcements and opened their door to allow the officers to execute the search warrant.
Unable to gain entry through Maye’s front door, Officers Ron Jones and Stephen Jones went to the back door of Maye’s apartment, leaving Officer Terrence Cooley to guard the front door. Officer Stephen Jones testified that upon reaching the back door, Officer Ron Jones checked to see if the back door would open, and then announced, “search warrant, police, search - warrant.” When the door would not open, Officers Ron Jones and Stephen Jones proceeded to the front of the house. Officers at the back of the duplex kicked the back door open. A couple of minutes passed between the officers’ first announcement at the front door and the back door being kicked in. After the back door was opened, Officer Ron Jones was called to the back of the house. He proceeded to enter the house, yelling “police.” He was met by shots fired from, Maye’s gun. Officer Ron Jones immediately left Maye’s apartment stating that he had been shot. He was taken by Officer Stephen Jones to the hospital, where Officer Ron Jones died shortly after arrival. Officer Cooley apprehended Maye. A search of Maye’s apartment conducted later by officers yielded small amounts of marijuana.
Maye, who admittedly was asleep on a chair right by the front door, testified that he was wakened by the banging on the front door. Maye denied hearing the police announce “police, search warrant” or looking out the window. Maye testified that he awoke frightened and ran to the bedroom in the back of the house. Maye testified that he grabbed his gun, loaded it, and laid it on the floor by the foot of his bed. His fourteen-month-old daughter was asleep in the middle of the bed. Maye testified that he heard kicks to the back door. He testified that he fired when he heard someone entering the house. Maye testified that after he fired the shots, he heard the other officers yell, “police, police, you just shot a[n] officer.” Maye testified that he immediately he put his weapon down and slid it away.
Maye, 49 So.3d at 1142-44. On December 26, 2001, immediately after the shooting, Maye was arrested and held without bond. Maye was charged with capital murder for the killing of a police officer. Id. at 1144. Maye requested and received a change of venue from Jefferson Davis County to Lamar County. Upon a second motion, he *1128 received a change of venue to Marion County. After a four-day trial beginning on January 21, 2004, Maye was convicted of the capital murder of Officer Jones and ultimately sentenced to life imprisonment without the possibility of parole.
¶ 3. Maye appealed his conyiction, and the case was assigned to the Court of Appeals. The Court of Appeals addressed seven of Maye’s twelve asserted issues and found six of those to be without merit. Particularly, it determined that Maye was not entitled to his requested jury instructions on the defense of others. Maye, 49 So.3d at 1149-51. But the Court of Appeals reversed Maye’s conviction and sentence and remanded for a new trial, finding that the trial court had violated Maye’s fundamental constitutional right to trial in Jefferson Davis County, the county where the offense had occurred. Id. at 1147. Specifically, the Court of Appeals found that the trial court had failed to offer adequate justification for refusing to allow Maye to withdraw his waiver of that right and to send the case back to that county. Id. at 1149.
¶ 4. The State filed a petition for writ of certiorari, asking this Court to review that determination. Maye filed a “conditional” petition for certiorari, asking this Court, in the event it granted the State’s petition and reversed, to review the Court of Appeals’ decision regarding the other issues. This Court granted both petitions on June 22, 2010. We vacate the Court of Appeals’s judgment. We also reverse the judgment of conviction because the trial . court abused its discretion when it refused Maye’s requested jury instructions, which would have properly extended his self-defense claim to defense of his daughter.
ISSUES
¶ 5. Under Mississippi Rule of Appellate Procedure 17(h), “[This] Court’s review on the grant of certiorari shall be conducted on the record and briefs previously filed in the Court of Appeals and any supplemental briefs filed.” Miss. R.App. P. 17(h). In his appellate brief, Maye asserted the following issues:
I. Whether the evidence presented at trial was sufficient as a matter of law to sustain a conviction on the charged offenses.
II. Whether a new trial must be granted because the jury’s verdict was against the weight of the evidence.
III. Whether the testimony of the State’s forensic pathologist was admitted in error.
IV. Whether the circuit court erred in denying supplemental discovery of the credentials and practices of the State’s expert witness.
V. Whether newly discovered forensic evidence necessitates a new trial.
VI. Whether the circuit court erroneously deprived the defendant of his right to be tried in Jefferson Davis County, as guaranteed by Article 3, Section 26 of the Mississippi Constitution.
VII. Whether the circuit court erred in refusing defendant’s requested jury instructions.
VIII. Whether the State procured a search warrant through fraud, mandating a new trial.
IX. Whether the circuit court should have granted a motion to suppress due to the lack of probable cause supporting the search warrant.
X. Whether prosecutorial misconduct demands reversal of the conviction.
XI. Whether the defendant received effective assistance of counsel as guaranteed by the Sixth Amendment [to] the U.S. Constitution.
*1129 XII. Whether the sentence constituted cruel or unusual punishment in violation of Article 3, Section 28 of the Mississippi Constitution or the Eighth Amendment [to] the U.S. Constitution.
¶ 6. Relying on Rule 17(h), we focus our discussion on Issue VII, jury instructions. Miss. R.App. P. 17(h).
DISCUSSION
¶ 7. Maye argues that the trial court committed reversible error by refusing his proposed jury instructions D-8 and D-9. The standard of review for the denial of jury instructions is well-settled. Jury instructions generally are within the discretion of the trial court. Davis v. State, 18 So.3d 842, 847 (Miss.2009) (citing Higgins v. State, 725 So.2d 220, 223 (Miss.1998)). This Court has explained that jury instructions must be considered together:
In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. There is no error if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law.
Rubenstein v. State, 941 So.2d 735, 784-85 (Miss.2006) (internal quotations and citations omitted). Additionally, we have explained that “[a] defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Hearn v. State, 3 So.3d 722, 738 (Miss.2008) (quoting Chandler v. State, 946 So.2d 355, 360 (Miss.2006)). See also Brooks v. State, 18 So.3d 833, 839 (Miss.2009).
¶ 8. But “[i]n homicide cases, the trial court should instruct the jury about a defendant’s theories of defense, justification, or excuses that are supported by the evidence, no matter how meager or unlikely, and the trial court’s failure to do so is error requiring reversal of a judgment of conviction.” Manuel v. State, 667 So.2d 590, 593 (Miss.1995). “If the defendant presents sufficient evidence in the record to support his theory of the case, he should then be given an instruction on his theory of the case. There needs not be even a plausible explanation.” Walker v. State, 913 So.2d 198, 235 (Miss.2005). When serious doubt exists as to whether an instruction should be included, the doubt should be resolved in favor of the accused. Davis, 18 So.3d at 847 (citing Stringfellow v. State, 595 So.2d 1320, 1322 (Miss.1992)).
¶ 9. The defense’s proposed instructions D-8 and D-9 both further defined self-defense. The trial court and the Court of Appeals found that the two self-defense instructions actually given to the jury (number 5 and number 6) sufficiently stated the law of self-defense and that the additional instructions were not necessary. Maye, 49 So.3d at -1149-51. We disagree.
¶ 10. Granted instruction number 5 stated simply that:
The Court instructs the jury that if you find from the evidence in this case that on December 26, 2001 Cory J. Maye did shoot and kill Ron Jones; but that such shooting was in necessary self-defense, as defined by other instructions of the Court; then your duty under the law is to find Cory J. Maye not guilty of the murder of Ron Jones.
(Emphasis added.) And granted instruction number 6 provided that:
*1130 The Court instructs the jury tha!t to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be actual, present and urgent, or the defendant must have reasonable grounds to believe that the victim intended to kill the defendant or to do him some great bodily harm, and in addition to this, he must have reasonable grounds to believe that there is imminent danger of such act being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the defendant acts. If you, the jury unanimously find that the defendant acted in self-defense then it is your sworn duty to return a verdict in favor of the defendant.
Maye, 49 So.3d at 1150-51 n. 1. While these two instructions are correct statements of the law, they do not fully define self-defense as applied to the facts of this case.[1]
¶ 11. Neither instruction addressed Maye’s asserted self-defense theory to include a “defense-of-others” rationale. Our justifiable-homicide statute provides the basis for a defense-of-others instruction. Miss.Code Ann. § 97-3-15(l)(f) (Rev.2007). Such an instruction may be proper when the defendant has reasonable grounds to believe certain force is necessary to prevent the danger of imminent death or bodily injury to another person. McGehee v. State, 138 Miss. 822, 104 So. 150, 153 (1925). See also Sheppard v. State, 777 So.2d 659, 662-63 (Miss.2000) (“[A] defense-of-others instruction ... inform[s] the jury that self-defense may be applicable where a defendant reasonably believed that another person, in addition to himself, may be in danger of imminent death or great bodily injury.”).
¶ 12. Our cases addressing the defense-of-others instruction do not require that the danger to the third person be separate and distinct from the danger perceived by the defendant. See, e.g., Calhoun v. State, 526 So.2d 531, 533 (Miss.1988) (reversing conviction because deceased’s record of threats against defendant and third party warranted defense-of-others instruction in addition to self-de fense instruction); Guster v. State, 758 So.2d 1086, 1089 (Miss.Ct.App.2000) (finding defense-of-others instruction required where defendant testified that she had stabbed deceased out of fear for her own and her son’s safety). In other words, the defendant and the third party may be threatened by the same source. The jury must decide the reasonableness of the defendant’s response in light of the circumstances. Cf. Hart v. State, 637 So.2d 1329, 1339 (Miss.1994).
¶ 13. But this is not to say that the mere presence of a third party will warrant the instruction. The third party must be exposed to some real and apparent danger when the defendant acts. In Folks v. State, we affirmed the denial of a defense-of-others instruction where the deceased had retreated almost twenty feet from the third party. Folks v. State, 230 Miss. 217, 92 So.2d 461, 462-63 (1957). After his retreat and when he was shot, the deceased posed a threat of imminent *1131 danger to the defendant and not to the third party. Id. at 462. Thus, although evidence was insufficient to warrant the defense-of-others instruction, we reversed and remanded for a jury to reconsider the defendant’s self-defense theory. Id. at 463.
¶ 14. It is undisputed that Maye’s fourteen-month-old daughter was asleep on the middle of the bed when Officer Jones entered the bedroom and was shot by Maye. We agree with the Court of Appeals that, “[bjecause the danger to Maye and his child were one and the same, if a self-defense instruction was appropriate, as it was, then likewise a defense of others instruction was also appropriate.” Maye, 49 So.3d at 1149. So Maye should have received a “defense-of-others” instruction to address his asserted defense of his daughter. Instructions D-8 and D-9 both did so. But before we may find error in the trial court’s refusal of instruction D-8 or D-9, we must be sure that either or both of them were correct statements of the law.
¶ 15. For the following reasons, we think instruction D-8 was a correct statement of the law and should have been given. First, instruction number 5 did not really instruct the jury on self-defense at all, since it told the jury that self-defense would be defined in other instructions and merely provided the jury with the proper verdict if that definition was met. Instruction number 6 correctly defined self-defense, generally.[2] But it did not go far enough in this case. It correctly defined self-defense as requiring the defendant to have reasonable grounds to believe that the victim intended to kill the defendant or to do him some great bodily harm, and reasonable grounds to believe that there was imminent danger of such act being accomplished. And it correctly told the jury that it must “determine the reasonableness of the grounds upon which the defendant acts.” But instruction number 6 did not tell the jury how to make that determination.
¶ 16. Instruction D-8 would have done just that. Instruction D-8 told the jury exactly how to judge Maye’s actions on the night he shot Officer Jones. It stated that:
The Court instructs the jury that you are not to judge the actions of Cory J. Maye in the cool, calm light of after-developed facts, but instead you are to judge his actions in the light of the circumstances confronting Cory J. Maye at the time, as you believe from the evidence that those circumstances reasonably appeared to him on that occasion; and if you believe that under those circumstances it reasonably appeared to Cory J. Maye, at the instant that he took up a weapon, that Cory J. Maye then and there had reasonable ground to apprehend a design on the part of Ron Jones to kill Cory J. Maye or his daughter or to do Cory J. Maye and his daughter some great personal injury, and there reasonably appeared to Cory J. Maye to be imminent danger of such designs being accomplished; then Cory J. Maye was justified in anticipating an attack and using reasonable means to defend such attack; then you must find Cory J. Maye not guilty of the murder of Ron Jones.
¶ 17. And the method for making that determination embodied by *1132 instruction D-8 has long been recognized by this Court. As far back as 1899, this Court recognized the principle that “the defendant should ... [be] permitted to claim the benefit of any apparent, as well as of any real, danger that the evidence afforded him, and that he [may] ... act[ ] upon the facts of the case as they reasonably appeared to him, and was justified in so doing.” McCrory v. State, 25 So. 671, 671-72 (Miss.1899) (emphasis added). We held in Scott v. State, 42 So. 184 (Miss.1906), that in a prosecution for murder, where the accused claimed self-defense as a justification, the court should have instructed the jury that, “in passing upon the action of the defendant the jury should not try him by the light of after-developed events [nor] hold him to the same cool and correct judgment which they are able to form. They should put themselves in his place and judge ... his acts by the facts and circumstances by which he was surrounded.” Id. at 184-85.[3]
¶ 18. Maye’s theory of the case was self-defense, which was supported by some evidence. Instruction D-8 was a correct statement of the law regarding how the jury should have interpreted Maye’s actions, and it properly would have extended Maye’s self-defense claim to include his asserted claim of defense of his infant daughter. Neither of these was covered by other instructions. Therefore, we hold that the trial court abused its discretion by refusing instruction D-8, an error which warrants reversal. Manuel, 667 So.2d at 593.
¶ 19. Maye also contends that instruction D-9 would have informed the jury of a homeowner’s right to use force to protect his dwelling from what reasonably appears to be an unlawful entry. See Miss.Code Ann. § 97-3-15(1)(e) (Rev. 2006); Lee v. State, 232 Miss. 717, 100 So.2d 358, 361 (1958). Requested instruction D-9 stated:
The Court instructs the jury that Cory J. Maye was not under an obligation to wait for serious bodily harm upon him and his daughter from Ron Jones before Cory J. Maye took action to defend himself and his daughter from an attack. If you find from the evidence that Cory J. Maye took action to defend himself and his daughter without knowing for certain that Ron Jones was about to cause him and his daughter serious bodily harm, and further that it was reasonably apparent to a reasonable person of average prudence that Cory J. Maye and his daughter were in danger of serious bodily harm, then you must find Cory J. Maye not guilty of the murder of Ron Jones. It is for the jury to determine the reasonableness of the ground upon which Cory J. Maye acted.
As written, the instruction covers self-defense and defense of others and fails to convey the substance of Section 97-3-15(l)(e) to the jury. Further, had D-9 been given along with D-6 and D-8, the jury would have received multiple instructions on self-defense and defense-of-others. Therefore, the instruction did not properly state the law on a homeowner’s right to protect his dwelling, and it would have been cumulative. We find no error in the denial of D-9. Hearn, 3 So.3d at 738.
CONCLUSION
¶ 20. We vacate the judgment of the Court of Appeals. We also reverse Maye’s *1133 judgment of conviction, because the trial court committed reversible error by refusing Maye’s requested defense-of-others jury instruction. Therefore, we remand this case to the trial court for a new trial consistent with this opinion. On remand, Maye is entitled to reassert his right to be tried in Jefferson Davis County. State v. Caldwell, 492 So.2d 575, 577 (Miss.1986) (en banc) (holding that a defendant could reassert his right to be tried in the county where the offense occurred after appellate reversal).
¶ 21. THE JUDGMENT OF THE COURT OF APPEALS IS VACATED. THE JUDGMENT OF THE CIRCUIT COURT OF JEFFERSON DAVIS COUNTY IS REVERSED, AND THIS CASE IS REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
CARLSON, P.J., DICKINSON AND KITCHENS, JJ., CONCUR. GRAVES, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ. LAMAR, J., CONCURS IN RESULT ONLY. RANDOLPH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY PIERCE, J. PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY LAMAR, J.

. We note that the jury was not specifically instructed on who has the burden of proof on self-defense. As we held in Pierce v. State, 289 So.2d 901 (Miss.1974), the burden of proof to prove self-defense is not on the defendant. Rather, it lies with the State to prove that the defendant did not act in self-defense. Id. at 902. But instruction number 2 told the jury that “the State [has] the burden of proving the defendant guilty of every material element of the crime ...” and that "[t]he defendant is not required to prove his innocence.” This instruction survives the Pierce rule, since it informed the jury that it should not look to Maye to prove self-defense, but to the State to prove the lack thereof.

. Instruction number 6 was a nearly verbatim statement of the self-defense instruction this Court recommended in Robinson v. State, 434 So.2d 206, 207 (Miss.1983), overruled on other grounds by Flowers v. State, 473 So.2d 164, 165 (Miss.1985), and Reddix v. State, 731 So.2d 591, 595 (Miss.1999).

. The wording of instruction D-8 most recently has been used in cases involving accidental killings, occurring as the defendant was acting in lawful self-defense. See Evans v. State, 797 So.2d 811, 814-15 (Miss.2000). But to the extent that instruction D-8 was improperly worded, it is the duty of the trial court to see that the instructions are placed in proper form for submission to the jury. Manuel, 667 So.2d at 593.