BARNES, J.,
dissenting:
¶ 36. With all respect to the majority, I find this case is controlled by Maye v. State, 49 So.3d 1124 (Miss.2010) and the principles noted therein. I would, therefore, reverse Crook’s conviction and remand for a new trial before a properly instructed jury.
¶ 37. The trial court’s refusal of jury instruction D-10 resulted from the prosecution’s misrepresentation of controlling authority to the court. The prosecutor cited Miller v. State, 733 So.2d 846 (Miss.Ct.App.1998) and Booker v. State, 64 So.3d 988 (Miss.Ct.App.2010) as being critical of the “cool, calm light of after-developed facts” language of proposed instruction D-10. While both cases dealt with jury instructions similar to D-10, the prosecutor’s comment was inaccurate because those cases did not criticize the language of this jury instruction.[6] On appeal, the State concedes that the prosecutor “misapprehended controlling case law,” but claims the prosecutor’s misrepresentation to the trial court was unintentional and that any error was harmless. While I have no reason to doubt the unintentional nature of the misrepresentation, I cannot agree that it was harmless. The misrepresentation resulted in the denial of a proper jury *366 instruction that was not covered by any other instruction.
¶38. In Crook’s case, three jury instructions relating to self-defense were given to the jury — one from the prosecution and two from the defense-S-2, D-3, and D-4. However, none of these instructions provided proper guidance to the jury on how to judge the reasonableness of Crook’s actions during the altercation, as I find mandated by Maye.
¶ 39. The majority seeks to distinguish Maye because Maye’s theory for claiming justifiable homicide was not merely self-defense, but also a “defense-of-others” rationale with respect to his infant daughter. Maye, 49 So.3d at 1130 (¶ 11). The supreme court reversed, expressly stating that “neither” Maye’s theory of self-defense nor his theory of defense-of-others was covered by the other instructions given on self-defense:
Maye’s theory of the case was self-defense, which was supported by some evidence. Instruction D-8 was a correct statement of the law regarding how the jury should have interpreted Maye’s actions, and it properly would have extended Maye’s self-defense claim to include his asserted claim of defense of his infant daughter. Neither of these was covered by other instructions. Therefore, we hold that the trial court abused its discretion by refusing instruction D-8, an error which warrants reversal.
Id. at 1132 (¶ 18) (emphasis added and citation omitted). I cannot adopt the majority’s position that the defense-of-others rationale was the supreme court’s reason for finding reversible error. The Maye court clearly found two separate errors in the denial of the instruction: both Maye’s defense-of-others rationale and his self-defense rationale.
¶ 40. Maye recognized that the language of proposed instruction D-10 has been a proper statement of the law for over one hundred years. The Maye court cited McCrory v. State, 25 So. 671, 671-72 (Miss.1899) for the principle that “the defendant should ... be permitted to claim the benefit of any apparent, as well as of any real, danger that the evidence afforded him, and that he may ... act upon the facts of the case as they reasonably appeared to him, and was justified in so doing.” Maye, 49 So.3d at 1132 (¶17). Maye further cited Scott v. State, 42 So. 184, 184-85 (Miss.1906), where the court stated that “in passing upon the action of the defendant the jury should not try him by the light of after-developed events [nor] hold him to the same cool and correct judgment which they are able to form. They should put themselves in his place and judge of his acts by the facts and circumstances by which he was surrounded.” Maye, 49 So.3d at 1132 (¶ 17) (brackets by the Maye court).
¶ 41. Further, the Maye court found the “Robinson instruction” — jury instruction six in Maye and instruction D-3 in this case — to be insufficient in instructing the jury on how to view the conduct of the defendant at the time of the incident. Both jury instructions are substantially similar in their statement that the defendant must have “reasonable grounds” to believe or apprehend that the victim intended to do “some great bodily harm” and have “reasonable grounds to apprehend that there is imminent danger of such” design or act “being accomplished.” See id. at 1130 (¶ 10). Further, each instruction advised that the jury determines “the reasonableness of the grounds.” See id. However, the Maye court criticized instruction six because it did not “go far enough” and tell the jury how to “determine the reasonableness of the grounds upon which the defendant acts.” Id. at 1131 (¶ 15). In this case, the only refer- *367 enees to “reasonableness” as it relates to self-defense appear in three instructions given to the jury: D-3, S-2, and D — 1 Instruction S-2 stated that the assault can only be justified if the danger to life or injury “must be, or reasonably appear[s] to be, imminent and present at the time the defendant commits the assault....” Also, D-4 provided that Crook acted in self-defense if he “had reasonable grounds to fear he would suffer great bodily harm and there was imminent danger of such harm occurring.”
¶ 42. These instructions go no further in advising the jury how to interpret Crook’s actions than the Robinson instruction found inadequate in Maye. No instruction told the jury to judge Crook’s actions as the “circumstances reasonably appeared to him” at the time of the altercation, and not within the “cool” judgment that they were able to form. It is uncontested that there was an altercation between Crook and Carter, and that at some point Carter was wielding a fan blade. Therefore, I find it was important for the jury to be instructed to consider Crook’s self-defense theory from the standpoint of the circumstances as they appeared to Crook at the time of the incident. I cannot limit Maye ⅛ holding to just its facts.
¶43. The majority also claims there was no justification in the record for misapprehension or mistaken belief, which was later brought to light by “after developed facts”; therefore, jury instruction D-10 was not justified. However, the State in Scott argued that it was not reversible error to refuse a similar instruction because there was no conflict in the testimony. Scott, 42 So. at 184. The supreme court disagreed, reversing and remanding the case for a new trial. Id. at 185. The supreme court in Maye quoted Scott in holding that the jury should have been instructed on two separate issues, noting: “in passing upon the action of the defendant the jury should not try him by the light of after-developed events [nor] hold him to the same cool and correct judgment they are able to form.” Maye, 49 So.3d at 1132 (¶ 17) (quoting Scott, 42 So. at 184-85) (brackets by the Maye court). Further, if the “after-developed events” portion of the jury instruction was not justified here, it would have been the duty of the trial judge to revise it and give the remainder of the instruction to which the defendant was entitled. See Maye, 49 So.3d at 1132 n. 3 (citing Manuel v. State, 667 So.2d 590, 593 (Miss.1995)).
¶ 44. In conclusion, the principles announced in D-10 have been a proper statement of the law in this State for over one hundred years. See Maye, 49 So.3d at 1131-32 (¶ 17). Jury instruction D-10 was properly supported by the facts, and none of the other jury instructions cover how the conduct of the defendant should be viewed. The Mississippi Supreme Court in Maye expressly determined that the Robinson instruction was inadequate to do so. Therefore, I would reverse and remand for a new trial before a properly instructed jury.
GRIFFIS, P.J., ISHEE AND RUSSELL, JJ„ JOIN THIS OPINION.

. Miller found jury instruction D-7 did not properly set out the law of self-defense, but did not elaborate — the issue being whether to grant the defense the opportunity to amend the instruction when no other self-defense instruction was presented to the jury. See Miller, 733 So.2d at 848 (¶ 5). In Booker, the State originally objected to the defense’s proffered instruction D-3 because it improperly commented on the evidence; so, the defense revised the instruction. But the revised instruction still contained the "cool, calm light” language. Booker, 64 So.3d at 996 (¶¶ 19-20). Hearing no objections, the trial court gave the amended instruction. Id. at (¶ 20). On appeal, Defendant Booker claimed reversible error in the revision of the original proffered instruction, even though he had agreed to it. Id. at (¶ 21). This Court agreed with the trial court that the original instruction improperly commented on the evidence, and we found no error in its refusal. Id. We did not discuss the language at issue here. See id.