# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-KA-01334-SCT

*TROY ANTHONY EATON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/08/2021 |
| TRIAL JUDGE: | HON. JOHN KELLY LUTHER |
| TRIAL COURT ATTORNEYS: | BENJAMIN F. CREEKMORE |
| | CHRISTINE B. TATUM |
| | BARTLEY MARSHALL ADAMS |
| | ROBERT M. CARTER |
| | THAD J. MUELLER |
| | JAMES ROGER FRANKS, JR. |
| | WILLIAM RUFUS WHEELER, JR |
| COURT FROM WHICH APPEALED: | TIPPAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | ZAKIA B. CHAMBERLAIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAUREN GABRIELLE CANTRELL |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/20/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., MAXWELL AND BEAM, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1. A Tippah County jury convicted Troy Anthony Eaton of second-degree murder for the shooting and death of Josh Smith and of aggravated assault for the shooting of Ricky Dale Vick. On appeal, Eaton challenges the admission of a glass pipe into evidence, the

sufficiency of the evidence, and the weight and credibility of the evidence. Finding no error, we affirm the convictions and sentences.

## FACTUAL AND PROCEDURAL HISTORY

¶2.     The jury was presented with two diametrically opposed versions of the events on September 29 and 30, 2020, that led to the shooting and death of Josh Smith and the shooting of Ricky Dale Vick. One version was presented by the prosecution through the testimony of Chelsea Smith, Josh Barnes, Josh Russell, Kristen Gomez, and Vick. The other version was presented by the defense through the testimony of Breanna Basden, Corey Basden, Michael Stroupe, and Troy Anthony Eaton.

### I.     Prosecution's Version

¶3.     Eaton rode to Hatchie Bottom in a Jeep with Corey, Breanna, Kristen, and Michael. The group stopped at the Crum Bridge and came across another group, which was comprised of Russell and his wife; Barnes and his fiance; Smith and his wife, Chelsea; and Vick. Eaton got out of the Jeep and asked whether anyone had whiskey. Russell stated that he only had beer and offered to grab Eaton one from the cooler near his side-by-side. When Russell and Eaton were alone, Eaton pulled out a glass pipe wrapped in a cloth and asked if Russell wanted to smoke. Russell recognized the pipe as a meth pipe and asked Eaton to leave. Eaton and his group left and went to the Walden Bridge.

¶4.     After Eaton's group left, Russell informed his group that Eaton had offered him meth. This aggravated Vick and Smith because Russell had struggled with meth use in the past.

2

Vick told Smith that if they saw Eaton again, he would confront Eaton because Smith recently had undergone toe surgery.

¶5. As Russell and his group were leaving the Crum Bridge on their four-wheelers and side-by-sides, they spotted Eaton riding in the Jeep. Smith flagged down the Jeep and walked over to the front passenger side where Eaton was seated. Smith asked Eaton whether he had offered Russell meth earlier. Eaton pulled out a gun and fired it at Smith. Smith fell backwards into a ditch. Vick then ran to jump on Eaton. Eaton shot him in the abdomen. Chelsea grabbed Eaton, but she was pushed out of the Jeep. The Jeep drove away, and Russell fired two shots as the Jeep passed him. Neither Vick nor Smith had a gun or made any physical contact with Eaton.

## II. Defense's Version

¶6. Eaton rode to Hatchie Bottom in a Jeep with Corey, Breanna, Kristen, and Michael. Once they arrived, they met a man named Spanky who informed them that he was leaving because Smith's group was getting out of hand. They then rode to the Crum Bridge where they met Smith's group. Eaton did not know most of the group but quickly made acquaintances with them. Eaton drank alcohol but never pulled out a pipe or offered anyone meth.

¶7. After spending a few minutes at the Crum Bridge, Eaton and his group got back in the Jeep and rode to the Walden Bridge. There, they met some other people and eventually decided to head back home. On the drive home, they came across Smith, Vick, and Chelsea.

3

Smith flagged them down. Eaton told Corey to stop the Jeep in case Smith needed help. When Corey stopped the Jeep, Smith ran to the front passenger side where Eaton was seated. Vick walked to the rear passenger side, and Chelsea walked to the front driver side. Smith and Vick asked Eaton whether he was trying to give Russell meth earlier. Eaton denied the accusations.

¶8.    Vick began ripping off his own shirt, and Smith crushed a beer can. Eaton told Corey to drive away, but Chelsea was in his lap trying to take the keys away. Smith then tried to grab Eaton from the Jeep. Eaton feared for his life and saw either Smith or Vick holding a gun. He grabbed his gun and fired it twice into the air.

¶9.    Corey was eventually able to get Chelsea off of his lap and drive the Jeep away. As the Jeep drove away, several other gunshots rang out behind it.

### III.    The Verdict

¶10.    After hearing each side's case, the jury found Eaton guilty of second-degree murder for the death of Smith and of aggravated assault for the shooting of Vick. The trial judge sentenced Eaton to a total sentence of forty years, with ten years suspended and thirty years to serve.[1] The judge denied Eaton's motion for a new trial or judgment notwithstanding the verdict.

### STATEMENT OF THE ISSUES

---

[1] Eaton received a forty-year sentence for second-degree murder, with ten years suspended and thirty years to serve. He also received a twenty-year sentence for aggravated assault, but it was ordered to run concurrently with the other sentence.

4

¶11. Eaton raises three issues: (1) whether the trial judge erred by admitting a glass pipe into evidence, (2) whether the second-degree murder verdict was supported by sufficient evidence or was against the overwhelming weight of the evidence, and (3) whether the aggravated assault verdict was supported by sufficient evidence or was against the overwhelming weight of the evidence.

## DISCUSSION

### I.        Whether the trial judge erred by admitting a glass pipe into evidence.

¶12. Eaton challenges the trial judge's admission of a glass pipe into evidence. He argues that "[t]he absence of any evidence connecting [him] to the pipe rendered its admission non-probative, purely inflammatory, and highly prejudicial." He also argues that the judge "failed to conduct a balancing test on the record."

¶13. Eaton filed a pretrial motion to suppress a glass pipe allegedly found in the area where he was apprehended by police. The trial judge subsequently held a motion hearing on February 9, 2021. At the hearing, the prosecution argued that the pipe should be admitted because it was found in the area where Eaton was apprehended. The pipe also was found no more than two feet away from a rag with Eaton's DNA on it. Additionally, the prosecution argued that admission of the pipe was necessary to tell a complete story of the events leading up to the shootings. The defense argued that the pipe was highly prejudicial because glass pipes are commonly used to smoke meth. The defense also argued that the prosecution had not shown the pipe belonged to Eaton.

5

¶14.    The judge determined that the pipe was relevant for the purpose of telling a complete story. He held that any prejudice to Eaton was outweighed by the pipe's probative value. He informed Eaton, however, that he would give the jury a limiting instruction on the pipe at Eaton's request.

¶15.    As part of his ruling at the February 9 hearing, the judge ordered the prosecution to provide the defense with the coordinates of the location where the pipe was found. The police subsequently met with defense counsel in the area where Eaton was apprehended and showed them the location.

¶16.    At a September 9, 2021 hearing, the judge revisited the issue of the pipe's admissibility. And, after the prosecution informed him that it had provided the defense with the location coordinates, the judge again held that the pipe's probative value outweighed any prejudicial effect. The judge reminded Eaton that a limiting instruction would be available at his request. Eaton did not request a limiting instruction.

¶17.    "Rule 403 [of the Mississippi Rules of Evidence] is an ultimate filter through which all otherwise admissible evidence must pass." *Ambrose v. State*, 254 So. 3d 77, 138 (Miss. 2018) (internal quotation marks omitted) (quoting *Batiste v. State*, 121 So. 3d 808, 863 (Miss. 2013)). It reads:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

MRE 403. "Where a trial [judge] determines that potentially prejudicial evidence possesses

sufficient probative value, it is within that [judge's] sound discretion whether or not to admit same, since M.R.E. 403 does not mandate exclusion but rather provides that such evidence *may* be excluded." ***Jones v. State***, 904 So. 2d 149, 152 (Miss. 2005) (citing ***Baldwin v. State***, 784 So. 2d 148, 156 (Miss. 2001)). This Court's role on appeal is to determine whether the trial judge abused his discretion by admitting the evidence. ***Jones v. State***, 303 So. 3d 734, 736 (Miss. 2020) (quoting ***Debrow v. State***, 972 So. 2d 550, 552 (Miss. 2007)).

¶18. Contrary to Eaton's arguments, the trial judge conducted multiple on-the-record balancing tests concerning the glass pipe. Each time, the judge determined that the pipe's probative value outweighed any prejudicial effect because it was necessary for the prosecution to tell a complete story of the events leading up to the shootings. Ultimately, "the State has a 'legitimate interest in telling a rational and coherent story of what happened . . . .'" ***Brown v. State***, 483 So. 2d 328, 330 (Miss. 1986) (quoting ***Turner v. State***, 478 So. 2d 300, 301 (Miss. 1985); ***Neal v. State***, 451 So. 2d 743, 759 (Miss. 1984)).

¶19. The glass pipe and the rag found near it support the prosecution's version of the events. As the testimony presented by the prosecution reflects, Eaton offered Russell meth by pulling out a glass pipe wrapped in a cloth. Additionally, Eaton shot Smith and Vick soon after Smith asked him about offering Russell meth.

¶20. The judge also determined that the pipe was sufficiently linked to Eaton such that it could be admitted at trial. The record reflects that the pipe was found in the immediate area where Eaton was apprehended by police. The pipe was also found within two feet of a rag

7

with Eaton's DNA on it. Moreover, Russell testified that Eaton showed him a glass pipe wrapped in a cloth and that the glass pipe in evidence resembled the one Eaton had showed him.

¶21. The trial judge conducted a Rule 403 balancing test and appropriately determined that the probative value of the glass pipe outweighed any prejudicial effect. The judge did not abuse his discretion by admitting the pipe.

## II. Whether the second-degree murder verdict was supported by sufficient evidence or was against the overwhelming weight of the evidence.

¶22. Eaton argues that the evidence was insufficient to prove, beyond a reasonable doubt, that he did not act in self-defense in killing Josh Smith. "However, this Court has held that '[t]he issue of justifiable self-defense presents a question of the *weight and credibility of the evidence* rather than sufficiency and is to be decided by the jury.'" ***Newell v. State***, 175 So. 3d 1260, 1268 (Miss. 2015) (alteration in original) (quoting ***Wade v. State***, 748 So. 2d 771, 774 (Miss. 1999)). When reviewing a weight-of-the-evidence challenge, "[o]ur role as appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." ***Little v. State***, 233 So. 3d 288, 289 (Miss. 2017).

¶23. Self-defense or justifiable homicide is codified at Mississippi Code Section 97-3-15(1)(f):

(1) The killing of a human being by the act, procurement or omission of another shall be justifiable . . .

. . .

(f) When committed in the lawful defense of one's own person or any other human being, where there shall be reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished[.]

Miss. Code Ann. 97-3-15(1)(f) (Rev. 2020). "The apprehension or fear that will justify killing another in self-defense must appear objectively real to a reasonable person of average prudence." *Nelson v. State*, 284 So. 3d 711, 716 (Miss. 2019) (internal quotation marks omitted) (quoting *Batiste*, 121 So. 3d at 845). The prosecution has the burden "to prove [beyond a reasonable doubt] that the defendant *did not* act in self-defense." *Maye v. State*, 49 So. 3d 1124, 1130 n.1 (Miss. 2010) (citing *Pierce v. State*, 289 So. 2d 901, 902 (Miss. 1974)).

¶24.    The prosecution presented the expert testimony of Dr. John Davis, the medical examiner who performed Smith's autopsy. He testified that Smith died from a single gunshot wound to the jaw. And, based on the presence of soot on Smith's face, Davis determined that the gun was fired within inches of Smith's face.

¶25.    The prosecution also presented the testimony of Vick and Chelsea. They testified that Smith walked over to Eaton and asked him about offering Russell meth. Eaton then pulled out a gun and fired it at Smith, causing Smith to fall into a ditch. Smith did not have a gun and had not moved toward or touched Eaton.

9

¶26. The defense presented the testimony of Emanuel Kapelsohn, an expert in firearms and ballistics, shooting scene reconstruction, and police procedures regarding traffic stops. Kapelsohn testified that Smith was within six inches to a foot of Eaton when he was shot, based on the size of the stippling on Smith's face. Kapelsohn also determined that based on the bullet's trajectory, Smith was leaning over Eaton when he was shot.

¶27. The defense also presented the testimony of Corey, Breanna, and Eaton. All of them testified that they feared for their lives based on the actions of Smith in flagging them down and approaching Eaton. Corey and Breanna testified that Smith was coming in on Eaton when he was shot. Breanna even testified that a scuffle ensued prior to Eaton shooting Smith. The prosecution, however, impeached this testimony by playing Corey's and Breanna's interviews taken at the police station hours after the shootings. The jury heard Breanna, in that interview, fail to mention that Smith came in on Eaton. They also heard Corey state that the altercation was purely verbal until Eaton shot Smith. Eaton testified that either Smith or Vick was holding a gun and that Smith was trying to pull him out of the Jeep. But no other witness testified about seeing either Smith or Vick holding a gun.

¶28. The defense presented evidence from Smith's autopsy showing that his blood alcohol content was nearly three times the legal limit. The defense also presented evidence showing that Smith was an off-duty highway patrol officer at the time of his death and that his conduct went against the standard protocol for stopping a vehicle when off duty.

¶29. The jury received instructions on second-degree murder and self-defense. It was

presented with Eaton's self-defense theory and testimony from Eaton that he feared for his life. It was also presented with Vick and Chelsea's version, which made Eaton's purported fear objectively unreasonable. "It [was] ultimately the jury's role to 'weigh witness testimony and determine its credibility.'" *Jones v. State*, 203 So. 3d 600, 607 (Miss. 2016) (quoting *Osborne v. State*, 54 So. 3d 841, 846 (Miss. 2011)). "[T]he jury rejected [Eaton's] self-defense theory and found the State's account of the events to be more credible, as is its prerogative." *Newell*, 175 So. 3d at 1268 (citing *Gandy v. State*, 373 So. 2d 1042, 1045 (Miss. 1979)). The second-degree murder verdict is not "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* (internal quotation mark omitted) (quoting *Gossett v. State*, 660 So. 2d 1285, 1294 (Miss. 1995)).

### III. Whether the aggravated assault verdict was supported by sufficient evidence or was against the overwhelming weight of the evidence.

### A. Sufficiency of the Evidence

¶30. Eaton argues the evidence was insufficient to prove that the bullet that injured Vick was discharged from his gun. When reviewing a claim of insufficient evidence, "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jones*, 904 So. 2d at 153-54 (citing *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). "Under this standard, 'the [prosecution] receives the benefit of all favorable inferences that may be reasonably drawn

11

from the evidence.'" ***Thomas v. State***, 277 So. 3d 532, 535 (Miss. 2019) (quoting ***Hughes v. State***, 983 So. 2d 270, 276 (Miss. 2008)).

¶31.    Eaton was convicted of aggravated assault under Mississippi Code Section 97-3-7(2)(a)(ii). "A person is guilty of aggravated assault if he or she . . . attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]" Miss. Code Ann. § 97-3-7(2)(a)(ii) (Rev. 2020).

¶32.    The prosecution presented the testimony of Vick and Chelsea. Chelsea testified that Eaton fired a second shot after Smith fell. Vick testified that Eaton shot him in the abdomen with a gun after Eaton shot Smith. Vick showed the jury the entry and exit wounds from the bullet on his body.

¶33.    The defense, meanwhile, presented testimony from Corey, Breanna, and Eaton. Corey and Breanna testified that there were other gunshots aside from Eaton's two shots. Neither of them saw Eaton shoot Vick. Eaton, however, testified that Vick came in on him after he shot Smith. Eaton "just pointed [his] gun and shot it. [He] didn't point it at [Vick]." He "just shot up in the air."

¶34.    Whether Eaton had the requisite intent was a factual determination for the jury to make. ***Thomas***, 277 So. 3d at 535. "[I]ntent may be proved from facts surrounding the case." ***Id.*** (citing ***Hughes***, 983 So. 2d at 278-79). "Indeed, a jury may infer guilty intent when considering the totality of the circumstances." ***Id.*** (citing ***Ryals v. State***, 305 So. 2d 354, 356

12

(Miss. 1974)). Viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found, beyond a reasonable doubt, that Eaton knowingly or purposely caused bodily injury to Vick with a deadly weapon.

**B.      Weight and Credibility of the Evidence**

¶35.    Eaton also argues that "even if [his] bullet did hit Vick, it was fired in self-defense." "The issue of justifiable self-defense presents a question of the weight and credibility of the evidence . . . ." *Wade*, 748 So. 2d at 774 (citing *Meshell v. State*, 506 So. 2d 989, 991-92 (Miss. 1987)). "Accordingly we must not disturb the jury's verdict unless we are 'convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Newell*, 175 So. 3d at 1268 (quoting *Gossett*, 660 So. 2d at 1294).

¶36.    This Court addressed self-defense in the context of aggravated assault in *Anderson v. State*:

> To make an assault justifiable on the grounds of self-defense, danger to the defendant must be either actual, present and urgent, or defendant must have reasonable grounds to apprehend design on the part of the victim to kill, or to do him some great bodily harm, and, in addition, there must be imminent danger of such design being accomplished.

*Anderson v. State*, 571 So. 2d 961, 963 (Miss. 1990) (citing *Jones v. State*, 418 So. 2d 832, 833 (Miss. 1982)). The burden of proving the defendant did not act in self-defense lies with the prosecution. *Heidel v. State*, 587 So. 2d 835, 843 (Miss. 1991) (citing *Sloan v. State*, 368 So. 2d. 228, 229 (Miss. 1979)).

¶37. The prosecution presented the testimony of Vick and Chelsea. Both testified that Vick did not make any physical contact with Eaton and that Vick did not have a gun. Vick testified that he ran to jump on Eaton but only after he saw Smith fall after being shot. Eaton shot Vick before he was able to jump on Eaton.

¶38. The defense presented the expert testimony of ballistics expert Kapelsohn. He testified that, based on the angles of Vick's entry and exit wounds, Vick was bent over the Jeep or reaching into the Jeep when he was shot. The defense also presented the testimony of Eaton. He testified that Vick came in on him after he shot Smith. Eaton just pointed his gun and shot it.

¶39. The jury received instructions on aggravated assault and self-defense. It heard Eaton's testimony and why he felt the need to use a deadly weapon. It also heard Vick and Chelsea's testimony, which showed that Eaton's use of a deadly weapon was unjustified. It was for the jury to "weigh witness testimony and determine its credibility." *Jones*, 203 So. 3d at 607 (internal quotation marks omitted) (quoting *Osborne*, 54 So. 3d at 846). And the jury "rejected [Eaton's] self-defense theory and found the State's account of the events to be more credible, as is its prerogative." *Newell*, 175 So. 3d at 1268 (citing *Gandy*, 373 So. 2d at 1045). The aggravated assault verdict is not "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* (internal quotation mark omitted) (quoting *Gossett*, 660 So. 2d at 1294).

## CONCLUSION

¶40. Eaton's challenges to the admission of a glass pipe, the sufficiency of the evidence, and the weight and credibility of the evidence are without merit. We affirm Eaton's convictions and sentences.

¶41. **AFFIRMED.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**