MAXWELL, J.,
for the Court:
¶ 1. A Forrest County jury found Wilbert Crook guilty of aggravated assault for stabbing Gemile Carter with a box cutter. The trial court sentenced Crook to twenty years in the custody of the Mississippi *356 Department of Corrections (MDOC) as a habitual offender, without eligibility for parole or probation. Crook now appeals, raising three issues. He claims the trial court erred in refusing jury instruction D-10 on self-defense and allowing certain comments by the prosecution during its closing argument rebuttal. Crook also argues that the verdict was against the weight and sufficiency of the evidence. Finding no error, we affirm Crook’s conviction and sentence.
FACTS AND PROCEDURAL HISTORY
¶ 2. On the afternoon of July 18, 2009, Loletta Dunn, her cousin Carter, and her three sons were in her vehicle on their way to a barbecue at Loletta’s father’s house. Crook and Loletta had been romantically involved for approximately one year but had recently broken up. Crook had borrowed Victor Ramirez’s truck to search for Loletta. Crook’s friend Willie Smith was with him. Crook passed Loletta on the road, and both vehicles pulled over. Crook and Loletta exited their respective vehicles and began arguing.
¶ 3. Testifying for the State, Loletta said Carter left her vehicle and began arguing with Crook, telling Crook to “quit cussing her out and calling out her name.” Crook then “got up in [Carter’s] face” and cursed him. Crook and Carter began fist fighting, but Loletta broke it up. Loletta stated:
And the next thing I know I see Wilbert Crook come out with a box cutter, and I’m like, “Don’t cut my cousin. Don’t cut him.” Like that. But they was steady arguing, but [Crook] looked like he was putting the box cutter back in his pocket, but then they started fighting again and the next thing I know I just see my cousin got blood all over his shirt.
Once the fight stopped, Loletta picked up the box cutter and tossed it into a field. She also began throwing full beer bottles out of her vehicle at Crook’s truck, breaking the windshield. Crook and Loletta drove away in their vehicles. Loletta dropped Carter off at her house and asked someone to call the police. She then went to Ramirez’s apartment, where Crook was located, and began throwing full beer bottles and bricks at the apartment door to keep Crook there until the police arrived. Loletta claimed she did not see who started the fight. Nor did she see Carter -with any weapon. She also did not actually witness Crook stab Carter, but saw that Carter was injured.
¶4. Smith also testified for the State. On July 18, he and Crook decided to borrow Ramirez’s truck and purchase beer and half a pint of whiskey. After drinking the alcohol, they went in search of Loletta and found her. Loletta told Crook to quit following her. The two got out of their vehicles and began arguing. Smith testified that Carter got out of Loletta’s vehicle with a ceiling-fan blade, but tossed it back in his vehicle when Crook told Carter to “fight me like a man.” When the two men began fighting, Carter had no weapon. Smith tried to break them up, but Crook cut Smith across the nose “with the razor.” Smith separated the two men and urged Crook to leave. Crook then put Carter in a “headlock.” Smith saw blood coming from Carter, but did not see Carter get stabbed.
¶ 5. Carter testified that on the day of the incident he went with Loletta and her children to see Loletta’s father. They passed Crook in Ramirez’s truck, and Crook flagged them down. Crook and Lo-letta began arguing, but when Crook became disrespectful and started calling Lo-letta names, Carter got out of Loletta’s vehicle without a weapon and approached *357 Crook. Crook started “getting violent” towards Carter, cursing at him. Carter noticed Crook had a box-cutter knife, so Carter retrieved a wooden ceiling-fan blade from Loletta’s vehicle. Crook told Carter to “fight like a man.” Carter then threw the fan blade back in the vehicle, and Crook put away his box cutter. Carter claims he never hit Crook with the fan blade. They began fighting, and Crook put Carter in a headlock and bit off a chunk of Carter’s finger. Smith saw Crook’s arm moving, then saw blood everywhere. After they stopped fighting, Loletta told Carter he was bleeding. Carter could not breathe and realized he had been stabbed deeply twice in the chest and once in the upper shoulder blade. His injuries required hospitalization.
¶ 6. Ramirez testified that when Crook returned to his apartment, Crook had a ripped shirt with blood on it. Crook told Ramirez he had “just cut some guy.” Ramirez testified Crook always carried a box cutter because Crook was a painter and installed carpet.
¶ 7. Officer Eric Hatten with the Hat-tiesburg Police Department, responding to a dispatch call, arrived at Ramirez’s apartment. Officer Hatten testified that Crook was handcuffed and looked like “he had been involved in something.” He was “real sweaty,” his shirt was torn, and he had a bruise over his left eye that looked like it had been made by a fist. Crook told Officer Hatten that he had been in an altercation and the “person had fallen on a knife or had been cut but the knife did not belong to him.”
¶ 8. Dr. Eric Jordan, who treated Carter in the emergency room, testified Carter had potentially life-threatening injuries. Carter’s three stab wounds penetrated the muscle, and his lung collapsed as a result of the stabbing.
¶ 9. Crook testified on his own behalf. He claimed the State witnesses’ versions of the stabbing conflicted with his version. Crook testified that during the argument Loletta began walking back to her vehicle, and Crook cursed her. Carter then jumped out of Loletta’s vehicle with “his fists balled up,” heading towards Crook. Carter cursed Crook and “started swinging.” Crook hit Carter once, and Carter stated, “that’s all right. I got something for you.” Carter ran back to Loletta’s vehicle, retrieving the fan blade. As Crook was retreating to his truck, Carter walked towards Crook with the fan blade and said, “I’m going to bust me some crack head.” Carter and Loletta were both cursing Crook, so Crook brandished his box cutter from his pants pocket in self-defense. Crook claimed Carter then hit him in the face with the fan blade. Carter pushed Crook to the ground and fell on top of him; Crook still had the box cutter in his hand. The men rolled around until Loletta broke them up. She noticed blood on Carter’s shirt and said to Crook, “you done cut my cousin.” Crook claimed he did not cut anyone. Loletta began throwing full beer bottles at Crook’s vehicle, breaking the truck’s windshield. Crook then departed the scene.
¶ 10. On cross-examination, Crook admitted he had been searching for Loletta to give her a beer prior to the altercation. He claimed he still considered Loletta his girlfriend. Crook also admitted that he and Smith had consumed several beers and a half pint of whiskey before finding Loletta.
¶ 11. In February 2010, Smith was arrested for a probation violation. Smith testified that during his incarceration, he shared a cell block with Crook in the Forrest County Jail. Crook wrote out a statement about the altercation and had Smith sign it. Three fellow prisoners witnessed *358 it. Smith is illiterate, but he can sign his name. This statement, entered into evidence, claimed that Carter had hit Crook in the face with the ceiling-fan blade, which conflicts with Smith’s testimony at trial, where he adamantly denied Carter ever hit Crook with a fan blade. The statement indicates Carter then pushed Crook down, and Carter fell on top of Crook. The men rolled a couple of times, and then Smith and Loletta broke up the fight. Crook testified that he gave this statement to his attorney two months before trial; however, the prosecutor stated he did not receive it until ten days before trial.
¶ 12. The jury found Crook guilty of aggravated assault. Crook’s post-trial motions on the weight and sufficiency of the evidence were denied, and he timely appealed.
ANALYSIS OF THE ISSUES
I. Jury Instruction D-10 on Self-Defense
¶ 13. The standard of review for a challenge to jury instructions is well established:
Jury instructions must be read as a whole to determine if the instructions were proper.... Jury instructions must fairly announce the law of the case and not create an injustice against the defendant. ... “In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results.”
Davis v. State, 18 So.3d 842, 847 (¶ 14) (Miss.2009) (quoting Milano v. State, 790 So.2d 179, 184 [(¶ 14)] (Miss.2001)). “A defendant has a right to jury instructions that present his theory of the case, but that right is not absolute. ‘The court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions or is without foundation in the evidence.’ ” Id. at (¶ 15) (quoting Phillipson v. State, 943 So.2d 670, 671 (¶ 6) (Miss.2006)). Regarding self-defense instructions: “When one jury instruction adequately covers the defendant’s theory of self-defense, the trial court may properly refuse ... a second instruction that is redundant or cumulative.” Johnson v. State, 749 So.2d 369, 374 (¶ 18) (Miss.Ct.App.1999) (citing Gossett v. State, 660 So.2d 1285, 1295 (Miss.1995)).
¶ 14. Crook argues it was reversible error for the trial court to refuse his jury instruction on the standard of reasonableness used to assess whether he acted in justifiable self-defense. Crook claims this refusal denied him the right to have his theory of self-defense fairly presented to the jury. Jury instruction D-10 reads:
The Court instructs the jury that you are not to judge the actions of Wilbert Crook in the cool, calm light of after-developed facts, but instead you are to judge his actions in the light of the circumstances confronting Wilbert Crook, at the time of the altercation with Gemile Carter, as you believe from the evidence that those circumstances reasonably appeared to him on that occasion; and if you believe under those circumstances it reasonably appeared to Wilbert Crook, that he then and there had reasonable grounds to apprehend great bodily harm from the actions of Gemile Carter, and there reasonably appeared to Wilbert Crook to be imminent danger of such harm being accomplished; then Wilbert Crook was justified in acting in self defense and you must find Wilbert Crook not guilty.
The trial judge rejected D-10, after the State objected to the “cool, calm light of after developed facts” language.
¶ 15. However, the trial judge gave six separate jury instructions touching on self *359 defense.[1] One of them, D-3, is a “Robinson instruction,”[2] complete with the additional language required by Reddix v. State — that the jury must acquit if it believed Crook acted in self defense.[3] D-B, offered by Crook, explained:
The Court instructs the jury that to make an assault justifiable on the grounds of self-defense the danger to the defendant must be either[] actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the other person involved in the altercation to kill the defendant or do him some great bodily harm, and in addition to this the defendant must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the defendant acts.
If you find from the evidence that Wilbert Crook acted in self-defense during the altercation with Gemile Carter then you must find Wilbert Crook not guilty.
¶ 16. In Gossett v. State, 660 So.2d at 1295, one of the defendants made the exact *360 same argument as Crook, that a Robinson instruction “did not properly instruct the jury to consider the circumstances existing at the time of the incident from his viewpoint as the defendant.” The defendant relied on Windham v. State, 91 Miss. 845, 852, 45 So. 861, 862 (1908) and Johnson v. State, 42 So. 166 (Miss.1906), which both held the “defendant was erroneously denied [a self-defense] instruction stating that jury should not expect from the defendant the same cool and calm judgment they would presently possess, but instead they should judge the defendant’s acts by the facts and circumstances existing at the time of the incident.” Id.
¶ 17. The supreme court in Gossett found, while the given Robinson instruction “may not have specifically addressed this point, the instruction was nevertheless a correct statement of the law on self-defense.” Id. The supreme court “expressly approved the instruction submitted to the jury” and even “urged prosecutors to employ this same self-defense jury instruction in the future.” Id. (citing Robinson, 434 So.2d at 207).
¶ 18. Relying on Gossett, this court has similarly concluded “[w]hen the trial court gives a Robinson instruction, the trial court does not err when it does not instruct the jury to examine the circumstances at the time of the incident from the defendant’s viewpoint.” Johnson, 749 So.2d at 373 (¶ 13) (citing Gossett, 660 So.2d at 1295). However, “[w]hen self-defense becomes an issue, the State’s instruction setting forth the elements of the crime should specifically place the burden of proof upon the State.” Id. at 374 (¶ 20) (citing Miss. Model Jury Instructions, § 114.01 (2d ed.1998)). “Thus, when the State’s elements instruction is paired with the Robinson-approved definition of self-defense, a jury would be sufficiently instructed as to the defendant’s right of self-defense and the State’s burden in disproving self-defense beyond a reasonable doubt.” Id.
¶ 19. Here, in addition to giving the jury a Robinson-approved definition of self-defense, jury instruction S-3A on the elements of the offense specifically placed the burden of proof on the State to prove beyond a reasonable doubt that Crook did not act in necessary self-defense. And D-5 instructed that Crook’s assault was excusable and that the jury must find him not guilty if “Crook by accident and misfortune ... injured Gemile Carter with a box cutter during an altercation.”[4] (Em *361 phasis added). A third instruction, D-2, explained:
The Court instructs the jury that an assault is justified when done in self defense. Wilbert Crook has raised the claim of self-defense. It is the State of Mississippi’s burden to prove beyond a reasonable doubt that Wilbert Crook did not act in self-defense, and unless the State meets this burden and proves to you beyond a reasonable doubt that Wilbert Crook was not acting in self-defense, then it is your sworn duty to find Wilbert Crook “Not Guilty.”
Crook’s “Robinson instruction,” D-S, is a correct statement of the law. When it is viewed in combination with an instruction that the State had to disprove self-defense beyond a reasonable doubt, and another explaining the jury must acquit Crook if it found the stabbing was caused by accident and misfortune during the fight, we find the trial judge sufficiently instructed the jury on Crook’s theory of self-defense.
¶ 20. Both Crook and the dissent argue Maye v. State, 49 So.3d 1124 (Miss.2010) entitled him to instruction D-10. But we point out the supreme court in Maye did not hold or in any way intimate that an instruction mirroring Crook’s proposed D-10 must be routinely given in every case where self-defense is raised. Instead, a split supreme court reversed Corey Maye’s murder conviction because the excluded jury instructions did “not fully define self-defense as applied to the facts of this case.” Id. at 1130 (¶ 10) (emphasis added). Indeed, the supreme court in Maye mentioned the fact-specific nature of its decision on the excluded jury instruction, not once but twice — a pertinent distinction missed by the dissent. Id. at 1130 (¶ 10); id. at 1131 (¶ 15) (finding self-defense instructions given “did not go far enough in this case ”) (emphasis added).
¶21. Without question, Maye’s facts are certainly unusual. Maye shot a police officer who was executing a lawful search warrant at Maye’s residence. At trial, Maye claimed self-defense, suggesting he mistakenly believed the officer to be an intruder. According to Maye, he was not initially aware he had shot a police officer.[5]
¶ 22. Our facts here differ vastly. Crook’s self defense claim, unlike Maye’s, did not concern “after developed facts.” Crook admitted pulling out a box cutter during the fight to allegedly protect himself from Carter smacking him with a fan blade. He claimed he was holding the box cutter, and Carter fell on it during the struggle. In short, he claimed he protected himself but that Carter’s stabbing was accidental — a defense the jury was specifically instructed about in D-5. Crook made no mention of a misapprehension or mistaken belief of imminent danger on his part. Nor did he allege he misjudged his purported attacker’s status. And there was certainly no claim that Crook mistook the supposed weapon Carter allegedly wielded — a wooden fan blade. Had Crook claimed he stabbed Carter because he appeared to be a robber, or that Carter brandished, for example, a toy gun, instead of a real one, or a whiskey bottle, instead *362 of a knife, our view would possibly differ. If such were the case, under Maye, Crook would have likely been entitled to instruct the jury in line with rejected instruction D-10: “you are not to judge the actions of Wilbert Crook in the cool, calm light of after developed facts, but instead you are to judge his actions in the light of the circumstances confronting Wilbert Crook, at the time of the altercation with Gemile Carter.” (Emphasis added). But here, unlike Maye, there is no misapprehension or mistaken belief later brought to light by “after developed facts.” Indeed, nothing at all differed in the least from “the circumstances confronting Wilbert Crook, at the time of the altercation with Gemile Carter.”
¶ 23. Maye ⅛ application is more limited than the dissent suggests. Maye recognized that a Robinson instruction, like D-3, which the trial judge gave here, “correctly defined self defense, generally.” Id. at 1131 (¶ 15). But the Maye court held “it did, not go far enough in this case.” Id. (emphasis added). Unlike Maye, where after-developed facts showed the intruder Maye thought he was shooting was indeed a policeman executing a warrant, here we are faced with a routine self-defense and accident claim. Thus, D-3, the “Robinson instruction”— which has carried the supreme court’s stamp of approval for twenty-five years— was a complete statement of the law, when considered with S-3A, and D-5, the accident/misfortune instruction. Considering these instructions together, we find the jury was adequately instructed on Crook’s defense theory.
II. Prosecutorial Misconduct
¶ 24. Crook complains that the prosecutor made several improper comments during closing argument rebuttal that inflamed the jury and attacked Crook’s constitutional rights, thereby prejudicing him and resulting in an unfair trial. Crook contends the trial judge further compounded the prosecutor’s allegedly prejudicial remarks by admonishing defense counsel in front of the jury, “exacerbating a pattern of disrespect and unnecessary comments” by the trial judge. Further, Crook states that the trial judge only rebuked defense counsel and not the prosecutor during the trial.
¶ 25. “Attorneys are allowed a wide latitude in arguing their cases to the jury. However, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury.” Sheppard v. State, 777 So.2d 659, 661 (¶ 7) (Miss.2000) (citing Miter v. State, 660 So.2d 961, 966 (Miss.1995)). The standard of review for “lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.” Slaughter v. State, 815 So.2d 1122, 1130 (¶ 45) (Miss.2002) (citing Sheppard, 777 So.2d at 660 (¶ 7)).
¶ 26. To review whether a prosecutor’s closing remarks were reversible error, we employ the two-part test adopted in Spicer v. State, 921 So.2d 292, 318 (¶ 55) (Miss.2006). First, we review the remarks to determine if they were improper. Id. If so, then we analyze whether the remarks prejudicially affected the rights of the accused. Id. “It must be clear beyond a reasonable doubt[,] that absent the prosecutor’s comments, the jury could have found the defendant guilty.” Id. But before applying this test, we must determine if defense counsel objected to the statement or if defense counsel invited the statement in light of the surrounding circumstances. Id. at 317-18 *363 (¶¶ 52-58). “[I]f no contemporaneous objection is made, the error, if any, is waived.” Slaughter, 815 So.2d at 1130 (¶ 47) (quoting Walker v. State, 671 So.2d 581, 597 (Miss.1995)).
¶ 27. Specifically, Crook complains that the prosecutor made the following improper comments during closing rebuttal, which unjustly prejudiced the defense. First, the prosecutor intentionally sought to inflame the jury with an air of cynicism when he stated: “Everything doesn’t happen in front of the First Baptist Church at twelve noon.” Second, he made a reference to an episode of the Bones television show where the defendant manipulated the witnesses. Third, the prosecutor stated there was “an assault on the judicial system” in reference to testimony in favor of Crook by Loletta’s estranged husband, whom the prosecutor referred to as one of Crook’s “cronies.” The defense did not object to the “church” and “cronies” comments; accordingly, any error is waived. Regardless of waiver, we find Crook was not unjustly prejudiced by any of the above comments. Absent these comments, the jury could have found Crook guilty beyond a reasonable doubt. Additionally, none of these comments equate to an improper send-a-message comment, as Crook argues.
¶ 28. Finally, Crook argues that the trial judge was disrespectful to defense counsel and unfairly biased towards the State throughout the trial. Specifically, Crook notes the following instances. During the defenses’s case-in-chief, when defense counsel attempted to offer Smith’s statement into evidence during the direct examination of another witness who signed it, and the trial judge stated: “Why didn’t you bring it out when Mr. Smith was on the stand?” Also, during defense counsel’s closing argument when he told the jury Crook had been in jail for a year and hasn’t “been able to bond out” because of lack of financial resources, the trial judge sustained the State’s objection to the comment and told the defense counsel he “was out of line.” Crook further criticizes the trial judge for not admonishing the prosecutor, or sustaining defense counsel’s objections, when the State made the comment about the Bones television show, called Crook and the defense witness “cronies,” and made the comment about “an assault on the judicial system.” “[T]rial judges may explain their rulings on evi-dentiary objections as long as they do not comment upon the evidence in a prejudicial manner.” Walden v. State, 29 So.3d 17, 22 (¶ 18) (Miss.Ct.App.2008). We find no demonstration of disrespect or bias during the trial by the trial judge against the defense; this argument is wholly without merit.
III. Sufficiency and Weight of the Evidence
¶ 29. Finally, Crook claims the jury verdict was against the sufficiency and weight of the evidence.

A. Sufficiency of the Evidence

¶ 30. A motion for a directed verdict and a judgment notwithstanding the verdict (JNOV) challenge the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). “[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). “All credible evidence supporting the conviction is taken as true; the State receives the benefit of all favorable inferences reasonably drawn from the evidence.” Withers v. State, 907 So.2d 342, 351 (¶ 24) (Miss.2005) (quoting Eakes v. State, 665 *364 So.2d 852, 872 (Miss.1995)). The court must ask “whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]’ ” Bush, 895 So.2d at 843 (¶ 16) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). “[I]f a review of the evidence reveals that it is of such quality and weight that, ‘having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,’ the evidence will be deemed to have been sufficient.” Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)).
¶ 31. Considering the evidence in the light most favorable to the State, we find that there was sufficient evidence presented for the jury to convict Crook of aggravated assault. The jury was instructed on the elements of aggravated assault: that Crook “unlawfully, willfully, and feloniously and knowingly caused bodily injury to Gemile Carter with a box cutter.” See Miss.Code Ann. § 97-3-7(2)(b) (Supp.2011). It was further instructed it must find “such behavior was not done in necessary self-defense.” The State presented sufficient evidence that Crook was the initial aggressor and did not act in self-defense. Crook went looking for and found Loletta in an attempt to reconcile their relationship, but during the confrontation Loletta told him to quit following her. Crook and Smith had been drinking before the altercation. Carter exited Loletta’s vehicle to tell Crook to stop “disrespecting” his cousin Loletta. According to Loletta’s testimony, Carter did not have a weapon, and Crook “got up in [Carter’s] face and cursed him.” Carter testified he retrieved the fan blade only after Crook became violent towards him; however, Carter did not walk towards Crook with the fan blade, but put it back in the vehicle. Carter also testified he never hit Crook with it. Crook testified that he was cursing Loletta, that Carter exited Loletta’s vehicle without a weapon, and Crook hit Carter. Loletta testified Crook pulled the box cutter out of his pocket. Smith, who was with Crook during the incident, also testified that Carter put the fan blade back in the vehicle and did not hit Crook with it. Although Smith did not see Crook stab Carter, he did see Crook’s arm move when Crook had Carter in a headlock, and then there was blood everywhere. Further, Ramirez testified that Crook told him he had cut someone. Additionally, Carter’s wounds were consistent with a stabbing, as they were deep.
¶ 32. Viewing the evidence in the light most favorable to the State, there was sufficient evidence to convict Crook of aggravate assault. Accordingly, the trial court did not abuse its discretion in denying Crook’s motion for a directed verdict or a JNOV.

B. Weight of the Evidence

¶ 33. A motion for a new trial challenges the weight of the evidence. Bush, 895 So.2d at 844 (¶ 18). The standard of review for a trial court’s denial of a motion for a new trial is abuse of discretion. Id. The reviewing court will only disturb a verdict “when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. All “evidence consistent with the defendant’s guilt is accepted as true together with any reasonable inferences that may be drawn from that evidence.” Young v. State, 891 So.2d 813, 821 (¶ 21) (Miss.2005) (citations omitted). “Any factual disputes are properly resolved by the jury and do not mandate a new trial.” Moore v. State, 859 So.2d 379, 385 (¶ 26) (Miss.2003) (quoting *365 McNeal v. State, 617 So.2d 999, 1009 (Miss.1998)).
¶ 34. Crook argues that the inconsistent testimony by the State’s witnesses points to a lack of weight as to the State’s evidence. We disagree. While there were inconsistencies in the testimony, the State established all of the elements of aggravated assault. The jury resolves conflicts in evidence, and in the case apparently found the testimony of Loletta, Carter, and Smith more credible than Crook’s testimony. Viewing the evidence in the light most favorable to the verdict, the weight of the evidence was not so contrary to the verdict that allowing this judgment to stand would sanction an unconscionable injustice. Therefore, the trial court did not err in denying Crook’s motion for a new trial.
¶ 35. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE AS A HABITUAL OFFENDER OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
LEE, C.J., IRVING, P.J., ROBERTS, CARLTON AND FAIR, JJ., CONCUR. BARNES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, P.J., ISHEE AND RUSSELL, JJ.

.In addition to the four instructions reproduced in this opinion (including note 4), the trial judge also gave the following two instructions:
Jury instruction S-2:
This Court instructs the Jury that a person may not use more force than reasonably appears necessary to save his life or protect himself from great bodily harm. The question of whether Wilbert Donnell Crook was justified in using the weapon is for the determination by Jury.
The law tolerates no justification and accepts no excuses for assault with a deadly weapon on the plea of Self-Defense except that the assualt by Wilbert Donnell Crook on Gemile Carter was necessary or apparently so to protect his life or his person from great bodily injury and there was immediate danger of such design being accomplished. The danger to life or of great personal injury must be, or reasonably appear to be, imminent and present at the time the defendant commits the assault with the deadly weapon. The term “apparent” as used in "apparent danger” means such overt, actual demonstration by conduct and acts of a design to take life or do some great personal injury as would make the assault apparently necessary to self-preservation or to escape great bodily harm.
Jury instruction D-4:
The Court instructs the jury that a person is under no duty to retreat and avoid the necessity of using deadly force where otherwise an assault is committed in self defense. If you find from the evidence that Wilbert Crook acted in self defense during the altercation with Gemile Carter because he had reasonable grounds to fear that he would suffer great bodily harm and there was an imminent danger of such harm occurring, then Wilbert Crook would have no duty to retreat from the altercation with Gemile Carter whether he could have done so with complete safety or not.

. In Robinson v. State, the supreme court recommended the following self-defense instruction:
The court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.
Robinson v. State, 434 So.2d 206, 207 (Miss. 1983) (overruled by Flowers v. State, 473 So.2d 164, 165 (Miss.1985) to extent that it merely criticized instead of condemned the instruction it replaced).

. See Reddix v. State, 731 So.2d 591, 595 (¶ 20) (Miss.1999) (holding the Robinson instruction given, "while fine for the State, is not sufficient as a neutral self defense instruction” because it "failed to notify the jury it was bound to acquit [the defendant] if it found that he acted in self defense”).

. Jury instruction S-3A reads:
The Court instructs the Jury that Wilbert Donnell Crook has been charged with the crime of Aggravated Assault.
If you find from the evidence beyond a reasonable doubt that:
1. Wilbert Donnell Crook, on or about July 18, 2009, in Forrest County, Mississippi;
2. unlawfully, feloniously, willfully, and knowingly caused bodily injury to Gemile Carter, with a deadly weapon, to wit: a box cutter, but stabbing Gemile Carter with a box cutter; and
3. that such behavior was not done in necessary self defense, accident, or misfortune;
then you shall find Wilbert Donnell Crook, guilty of Aggravated Assault.
If the State has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find Wilbert Donnell Crook, not guilty of Aggravated Assault.
(Emphasis added). Jury instruction D-5 further instructed:
The Court instructs the jury that an assault shall be excusable when committed by accident or misfortune, in the heat of passion, upon any sudden and sufficient provocation.
If you find from the evidence that Wilbert Crook by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation, injured Gemile Carter with a box cutter during an altercation on July 18, 2009, then you must find Wilbert Crook not guilty.

. Maye's defense-of-others justification, which is not at issue in this case, was also a cited reason the supreme court found reversible error. Maye, 49 So.3d at 1130-31 (¶¶ 10-14). Maye's fourteen-month-old daughter was present when he shot the officer whom he allegedly mistakenly believed was an intruder. Id. at 1131 (¶ 14). The supreme court held Maye was entitled to a defense-of-others instruction, and neither of the given self-defense instructions "addressed Maye’s asserted self-defense theory to include a ‘defense-of-others’ rationale.” Id. at 1130 (¶11). Because refused instructions D-8 and D-9 addressed defense of others — and because they were correct statements of the law — the supreme court held the refusal of these instructions was reversible error. Id. at 1131-32 (¶¶ 14-19).